UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEXTER K. MURRAY,

    Plaintiff,

-against-   **CV 13 - 7090**

ORIGINAL

CIVIL RIGHTS COMPLAINT

JURY TRIAL DEMANDED
<u>42 USC SEC. 1983 & 1985</u>

NEW YORK STATE DIVISION OF PAROLE
NEW YORK STATE DEPT. OF CORRECTIONAL SERVICE
NEW YORK CITY DEPT. OF CORRECTIONAL SERVICES
NEW YORK CITY POLICE DEPARTMENT
NEW YORK CITY HUMAN RESOURCE ADMINISTRATION SERVICES
NEW YORK KINGS COUNTY DISTRICT ATTORNEY OFFICE
NEW YORK ALBANY COUNTY COURT OF APPEALS
NEW YORK KINGS COUNTY SUPREME COURT CLERK OFFICE
NEW YORK STATE KINGS COUNTY SUPREME COURT
NEW YORK STATE WYOMING COUNTY SUPREME COURT
NEW YORK STATE OFFICE OF CHILD & FAMILY SERVICES
NARCO FREEDOM DRUG PROGRAM, "DENNIS & MEDICAL"
MIRACLE HOUSE, JOSEPH GENTILE & CHARLIE WISE
DETECTIVE PAUL BOSTIC & RONALD MOORE, 67TH PRECINCT
DETECTIVE TAMMY WEISBERG OF THE 75TH PRECINCT
"JOHN DOE" DETECTIVE OF THE 84TH PRECINCT
"JOHN DOE" (BADGE #6377) KINGS COUNTY FAMILY C.O.
- SASHA GODOY ("Perjurer"), SYLVIA LAKE ("Bailment")
LASTARR DAVIS, A.C.S AGENT
PAROLE OFFICER KATHLEEN PETGRAVE
PAROLE OFFICER, SUPERVISOR ALPHONSO CAMACHO
PAROLE OFFICER ANN MOORE
PAL A& M SCHWARTZ HEAD START
HEAD START DIRECTOR MS. RUDDER
HEAD START TEACHER MS. RODRIGUEZ,

       Defendants.

---

MATSUMOTO, J.

BLOOM, M.J.

RECEIVED DEC 10 2013 PRO SE OFFICE

## PRELIMINARY STATEMENT

This is a civil rights complaint action filed by Dexter K. Murray, a New York state resident for compensatory damages and injunctive relief, under 42 United States Code (USC) section 1983, alleging a violation of his state protected rights pursuant to Article 1 sections: 5, 6, 8 11 and 12, of the New York State Constitution. And conspiracy to deny plaintiff/petitioner's rights under 42 USC section 1985(3).

## JURISDICTION

1.) This court has jurisdiction over the plaintiff's/petitioner's claim of violation of federal constitutional rights, under 42 USC section 1331(a) and all sections of 28 USC section 1343. Plaintiff/Petitioner also invoke the court supplemental ("pendent") jurisdiction over his state law or "Constitutional Tort Claims" (as espoused in the New York State' landmark decision in: "Brown v. State"[1996]), pursuant to Article 1 sections: 5, 6, 8, 11 and 12, of the New York State Constitution and 28 USC section 1367. This court also has jurisdiction of plaintiff's/petitioner's claims under General Municipal Law: County Law sections: 51, 52, 53, 218 and 941.

## PARTIES

2.) The Plaintiff/Petitioner, Dexter K. Murray, at all times material hereto: was, is and continue to be a denizen of New York State, And , Plaintiff/Petitioner is a parolee on "community supervision" until the year 2025.

3.) Defendants: New York State Division of Parole, New York State Department of Correctional Services, New York Municipal Corporation, New York City Police Departments, New York Kings County District Attorney's office, New York State County of Kings, New York State County of Wyoming, New York State County of Albany, New York City Human Resource Administrative Services (HRA), New York State Kings County Supreme Court, New York State Kings County Supreme Court Clerk Office, New York State Office of Child And Family Services, Narco Freedom Drug Program: Dennis & Medical Dept., Miracle House: Joseph Gentile and Charlie Wise, Detective Tammy Weisburg of the 75th Precinct, Detective Paul Bostic (Badge #6217), and Detective Ronald Moore (Badge #17790; "Resigned") of the 67th Precinct, "John Doe" (Badge #6377): Kings County Family Court, Sasha Godoy: ("Perjurer"), Sylvia Lake("Bailment"), La-Starr Davis: ACS Agent, Parole Officer Kathleen Petgrave, Parole Officer Alphonso Camacho, Parole Officer Ann Moore, PAL A&M SCHWARTZ Headstart, Headstart Director Ms. Rudder, Headstart Teacher Ms. Rodriquez.

## **FACTS**

4.) Plaintiff/Petitioner was arrested in his common-law wife's mother's apartment, without a warrant, consent or exigent circumstances, in violation of his rights under Article 1 sections: 6, 11 and 12 of New York State constitution.

5.) New York City Police defendants: Bostic and Moore "entered" (crossed the threshold) into Sarah Mullen's home with drawn guns in search of plaintiff/petitioner absent a hot pursuit or exigent circumstances. Plaintiff was arrested in Mullen's home, in violation of Minnesota v. Olson, Steagald v. U.S., Payton v. New York and Brown v. State. Plaintiff/Petitioner continue to serve the unlawful sentence resulting from the aforementioned unlawful arrest. Plaintiff/Petitioner sentence expires in 9-12-2025.

6.) The Kings, Albany and Wyoming municipalities refused to afford plaintiff/petitioner due process and equal protection of the law, where it declined to decide the Harris v. New York, 77 N.Y. 2d 434 issue of his case, **on remand** from New York v. Harris, 494 U.S. 14; the date of accrual is when all the elements become enforceable in the complaint. Plaintiff/Petitioner continue to serve the unlawful sentence , which is a product of the unlawful arrest. And now approximately 30 years later he is serving unlawful parole for a case in which there was no murder. Plaintiff's'/Petitioner sentence is more harsh then someone convicted of murder, especially since he completed three (3) consecutive years on parole without incident: "From December 20, 2004 to January 2008. Parole Officer Sabrina Davis sought to have plaintiff/petitioner discharged from parole after three consecutive years without incident. Plaintiff/Petitioner's parole had been exemplary during this period.

7.) At the very least, seven assistant prosecutors under both Charles J. Hynes and Elizabeth Holtzman misstated the facts, and legal issues in every brief, motion, and letter, in opposition to the record and plaintiff/petitioner's effort to attain relief; albeit, the prosecuting attorney -- Richard Baer -- at trial conceded that defendants Bostic and Moore violated ***PAYTON*** to effectuate the arrest of plaintiff/petitioner. The trial occurred under indictment number 911/85

8.) Kings County clerks' office relied on two separate sets of transcripts and caused the court to sentence plaintiff/petitioner to a charge he was not ever convicted of, and such charged conviction was used to enhance petitioner's sentence and is unlawful. Plaintiff/Petitioner prison classification and eligibility for certain time reduction considerations was effected by the erroneous higher level of conviction, which continue to effect his sentence to date. Plaintiff/Petitioner's sentence continue to remain in err because to correct same would illustrate how the court's promise of a *youthful offender* on a class "d" armed felony was impermissible, as a matter of law. Albeit, the court and the prosecution conceded this would be the sentence. One set of transcripts list prosecutor "A. Bara" (a male) and the second set list prosecutor : Amy Feinstein (a female) as the prosecutor of record. Indictment number 3557/83 minutes were deliberately

altered to deprive plaintiff/petitioner his due process rights, under Kings County Judge Michael Pesce.

9.)  Plaintiff/Petitioner's release to parole after serving approximately 21 years has parole directing petitioner to partake in drug programs, albeit plaintiff does not have a drug problem and never has he tested positive for any illicit drugs. Plaintiff/Petitioner is mandated to residential drug programs, at the expense of taxpayers dollars, and is forced to live in deplorable conditions, resulting in deterioration in health, and exacerbating his pre-existing health issues. Plaintiff/Petitioner lived in "mold and mildewed" quarters for six months or more. This was plaintiff's third drug parole mandated program despite parole had toxicology exams performed illustrating petitioner had not used illicit drugs since 1989.

10.)  Human Resource Administration ("HRA") (who pay the drug program "rent" on behalf of the recipient), are in cahoots with New York State division of parole ( "community supervision"), who warehouse ex-offenders at these three/quarter houses,  in most instances in dilapidated housing conditions; who benefit monetarily by investing in these programs and requiring their "charges" (parolees) to remain at these locations rather then allow them to transition back into normal society with loved ones and friends. A condition of parole is that ex-offenders not be allowed to fraternize with other ex-felons, however this stipulation is "ignored" to allow some parole officer to benefit financially and so their entire case load is in a single location, substantially reducing their work responsibility, while the parolee remain in a cycle of despair and hopelessness, and homelessness. These program claim to assist parolees in obtaining independent housing, which they do not. Instead they exploit ex-offenders thus creating a cycle of recidivism. Plaintiff/Petitioner remain severely un-domiciled despite he retain an unused Section-8 voucher (#0611162), which was allowed to expire when plaintiff/petitioner was return to prison for an alleged parole violation

11.)  One such program: "Narco Freedom" require HRA Medicaid to participate, negative TB testing results to  matriculate, and a mandatory parole placement, as a way to control and ensure participation. Defendant Dennis and Narco Freedom medical personnel falsified his "negative" TB results (Petitioner has tested "positive" for TB in 1985 and will always test positive). Petitioner refused to be inoculated with the TB culture knowing it would show he was positive, when he refused; he was threatened with a "parole violation" and a return to prison and when he conceded to the TB test, Narco Freedom and Dennis noted on plaintiff's medical documents that he was "negative." Despite the false negative TB test results, plaintiff/petitioner went to the Kings County health department for a chest X-Ray. The health department noted Narco Freedom Medical staff should not have made this error if I was saying I had been exposed to TB since 1985.

12.) Narco Freedom as a program designed to assist individual ex-offenders from illicit drug consumption and use did not account for addictive personalities, coupled with a "non-secure prison-like" environment. No random drug test occurred at the residence where the "parolees" lived. Larcenies of all type occur

regularly. In effort to circumvent testing positive for marijuana, program participants were consuming a drug which mimic marijuana identified as "K-2" or "Spice." Because no security or in-house random testing occurred, plaintiff/petitioner was assaulted by a Narco Freedom resident high off of "K-2," in violation of his rights to be free from unwanted emotional and physical affliction and distress; in an environment which must be free of imminent threat, that could cause a relapse. This did not occur, in violation of plaintiff's/petitioner's civil rights. Plaintiff/Petitioner was also a victim of a grand larceny where his "hearing aids" were stolen from his room by another resident parolee. See case #3519 on file in the 81st precinct. Narco Freedom still has yet to hire security personnel to ensure a more safe environment conducive to treatment., and normal social-transition, post-incarceration

13.) Plaintiff/Petitioner has informed parole that he is being harassed by Defendant Godoy because they were in a relationship, that he broke off. Defendant Godoy and her mother Defendant Lake threatened to have him locked up on false pretenses of a "parole violation." Plaintiff/Petitioner went to family court and obtain an order of protection against Defendant Godoy and her mother Defendant Lake. The court issued plaintiff an order of protection on behalf of the child (who is purported to be plaintiff's son according to Defendant Godoy). The Kings County Family Court issued Defendant Godoy an order of protection against plaintiff/petitioner. The Court also issued plaintiff/petitioner an order of protection against Godoy on behalf of the subject child, to wit: "No corporal punishment. " The court also issued plaintiff/petitioner an order of protection against Defendant Lake--the mother of Defendant Godoy, who threatened to get plaintiff locked up on false pretenses to parole and the NYC police department. Since then defendant Godoy has threatened plaintiff/petitioner with bodily harm and death -- in the court corridors -- because the court ordered a DNA test, to determine if the subject child is plaintiff's/petitioner's.

14.) "John Doe" family court officer (badge #6377) admonished Defendant Godoy three separate occasions outside courtroom 49A to discontinue her ranting and raving. Plaintiff/Petitioner approached John Doe and said Defendant Godoy was referring to him. John Doe did nothing to stop Defendant Godoy's tirade. Plaintiff/Petitioner reported the incident to the 84th precinct. Subsequently Detective Butch apprehended Defendant Godoy and the charges of "violation of an order of protection" had been reduced to "aggravated harassment" because the family court (Judge Ross) did not issue plaintiff/petitioner an order of protection, albeit, Plaintiff/Petitioner had believed one had been issued. Detective Butch of the 84th precinct indicated his computer system had shown there was an order of protection against Defendant Godoy by plaintiff/petitioner.

15.) Judge Richard Ross committed gender discrimination by issuing Defendant Godoy an order of protection against plaintiff/petitioner May 23, 2013, but denying plaintiff/petitioner an order of protection against Defendant Godoy, on May 6, 2013. Although he issued plaintiff/petitioner an order of protection against Defendant Godoy on behalf of the child. And plaintiff/petitioner sought to be included in the order of protection issued on behalf of the child on May 6 2013. Judge Michael Katz issued plaintiff/petitioner

an order of protection on June 7, 2013 against Defendant Godoy. New York State Division of Parole was provided copies of all papers filed in family court to no avail. Plaintiff/Petitioner continued to be arrested and taken into custody despite apprising parole and the court of Defendant Godoys' lies and intention, to keep plaintiff/petitioner locked up, and out the way of her obtaining housing and benefits under the guise of Domestic violence.

16.) Defendant Kathleen Petgrave conveniently omitted in the "Notice of Parole Violation" all the efforts plaintiff/petitioner made to keep Defendant Godoy away from him. Parole officer Petgrave and Supervisor Alphonso Camacho are both Hispanic as well Defendant Godoy. Parole officers Petgrave and Camacho gave Defendant Godoy a Parole Hearing despite they knew there was no basis for his being violated and taken into custody. Defendant Petgrave advised Plaintiff/Petitioner to waive his preliminary hearing and go directly to his final hearing., knowingly deceiving Plaintiff/Petitioner to "admit he violated his parole conditions and establish "probable cause for a 90 day final hearing hold." Defendants Petgrave and Camacho violated petitioner rights because he is African American, and among the nations most exploited and vulnerable group. Additionally supervisor Camacho tried to twist /wrangle plaintiff/petitioner's arm into accepting Defendant Godoy's baby without a DNA determination. Camacho suggested that Hispanic males accept children "if they love the child" and if they were putting "leche" (Milk, e.g. "sperm") inside the recipient regardless. Parole officer Camacho became frustrated and stated Defendant Godoy was "mad" he did not accept the child and that he should just accept the child to avoid being violated on parole. Defendant Petgrave agreed with Plaintiff/Petitioner, that he should know the truth definitively one way or the other. Defendant Petgrave has agreed to allow plaintiff/petitioner to move to South Carolina with his family, to avoid Defendant Godoy's relentless wrath of lies and exploitation, however there is the matter of yet another "I-Card" or complaint filed in the 84[th] precinct on November 18, 2013, two days subsequent his earlier foray with Defendant Godoy and Parole. This court should issue a (TRO) temporary restraining order to Defendant Godoy prohibiting her from filing any new claims until the earlier claims are resolved.

17.) Plaintiff/Petitioner was ultimately violated on parole because Defendant Godoy said he was in her lobby at 1:00 a.m.; he texted her cell phone and called her cell phone (from a blocked number) and harassed her. Plaintiff/Petitioner was arrested on May 21, 2013 at the parole office by Police from the 75th precinct, plaintiff/petitioner was bailed out and the case was dismissed (ACD disposition) on May 30, 2013. Defendant Tammy Weisburg of the 75th precinct omitted information in the UF 61 police complaint report, that she later arrested him for in September 9, 2013 and he was released on his own recognizance September 11, 2013. The 9-9-13 arrest was generated from a July 29th incident in which Defendant Godoy alleged he was in her lobby at 1:00 a.m., harassing her, ringing her doorbell, hanging in her lobby in violation of the order of protection. Defendant Weisberg "did plaintiff/petitioner a favor" by including an "open complaint" from May 17, 2013, in her paperwork from the September arrest. This information

should have been included in the May 21, 2013 arrest, which was disposed of in the Kings County Criminal Court. The now pending May 17, 2013 claim creates a situation of: Res Judicata or Collateral Estoppel or "Double Jeopardy".

18.) The May 17, 2013 arrest pre-dates any "order of protection." Thus plaintiff/petitioner is not charged with "Contempt of Court." But the older criminal charge included in a new arrest appear to have been done to make plaintiff/petitioner perceptively "an aggravated harasser," in the eyes of the court; especially if the arresting officer is the same and the complaint was generated out the same precinct. The facts are not elucidated to discern an obfuscated matter. It is inexplicable why Defendant Weisburg did not charge plaintiff/petitioner on May 21, 2013, the day he was arrested by the 75th precinct--while reporting at parole--with aggravated harassment, occurring May 17, 2013. Defendant Weisburg included the May 17, 2013 complaint in an arrest occurring on September 9, 2013, for an alleged complaint stemming from July 29, 2013 (still pending in Kings County Supreme Court). The May 21, 2013 arrest was adjourned on May 30, 2013--in contemplation of a dismissal.

19.) In April 2013 Defendant Ann Moore threatened that if plaintiff/petitioner did not return Defendant Godoy her personal property in his storage unit, that the Division ("parole") would figure out a way to violate plaintiff/petitioner. Defendant Moore tried to intimidate plaintiff/petitioner by advising him strongly to give Defendant Godoy items in his personal storage. Additionally Defendant Moore attempted to use her authoritative position as his parole officer to get plaintiff/petitioner to accept his son's mother Defendant Godoy's alternate lifestyle of homosexuality, which goes against his religious belief.

20.) Defendants Petgrave and Camacho included both the May 17, 2013 and the July 29, 2013 incidents in one violation of parole hearing. Both charges were dismissed -- *with prejudice*-- by the administrative law judge who found defendant Godoy's testimony incredible, as a matter of law, and admonished the Division. After it was learned that plaintiff/petitioner had been release during a (DNA) court scheduled appearance, defendant Godoy filed yet another false report with the 84th precinct, with the understanding that because there is an order of protection in place, plaintiff/petitioner will be taken into custody again. Despite proving on two separate occasion that defendant Godoy is a perjurer, New York State Division of parole and Kings County District Attorney office, continue to allow Defendant Godoy to run the gambit of the system roughshod with impunity.

21.) Defendant LaStarr Davis is an ACS agent appointed by the court to investigate the claim plaintiff/petitioner raised in his order of protection on the subject child's behalf. Defendant Davis said she could not speak to plaintiff/petitioner until she acquired permission from his parole officer. This practice or policy leaves the subject child in imminent danger, while the ACS agent wait to speak to plaintiff/petitioner's parole officer. When plaintiff/petitioner inquired as to whether this is an "intra-agency" policy, Defendant Davis falsely claim that it was. The subject child and the purported subject

child's father civil rights were violated by defendant Davis's dereliction of duty and obligation to the child. In retaliation Defendant Davis has made a finding that plaintiff/petitioner is "indicated" (meaning he is responsible for any maltreatment or abuse and neglect of the child). Plaintiff/Petitioner is scheduled for a hearing December 17, 2013 to address /appeal the agencies finding of culpability on his part.

22.) Plaintiff/petitioner has a mental health history of manic/severe depression and post traumatic stress syndrome with psychotic features/ schizo-affective disorder, developing over the course of 20 plus consecutive years of incarceration. Defendants PAL A&M Schwartz head start, video-taped plaintiff/petitioner's minor-age son without permission. Subject child demonstrated some of the traits which plagued the subject child and caused Head Start to recommend to the custodial parent Defendant Godoy to have him psychiatrically evaluated. When Defendant Godoy refused to have the subject child "Evaluated" they asked plaintiff/petitioner would he agree since subject child had: "<u>bit a little girl , spit on a teacher, threw a bowl hitting a little boy, and attempted to run out the school.</u>" The actions of head start teacher Ms. Rodriguez, with the approval, knowledge and awareness of the Head Start director Defendant Rudder, video-taping a 3 year old, violated the civil rights of the subject child as well plaintiff/petitioner. Head Start personnel falsified information to ACS agent defendant Davis, because he threatened to file this lawsuit.

23.) Defendant Godoy has denied plaintiff/petitioner his legal papers, and the key to his post office box at James A. Farley station (Box 7228), she has opened his personal mail without his permission, in violation of federal laws, and denied him his personal property in her residence, e.g., video four games console, micro wave, sneakers, photos, jewelry, winter coat/jacket (olive green), portable t.v, car radio, car antennae, and she caused plaintiff/petitioner to withdraw his paternity petition from family court because she continue to commit perjury on official documents with impunity. Plaintiff/petitioner has an order of protection against Defendant Godoy and she has an order of protection against plaintiff/petitioner; however, Defendant Godoy is using her order of protection to exploit plaintiff's/petitioner's parole vulnerability and Paroles' zero tolerance for domestic violence policy. Defendant Godoy is repeatedly getting him arrested on false claims, which he has proven to be false in the criminal court and in parole court. Minority women are exploiting their men to obtain apartments and financial benefits by claiming domestic abuse. Plaintiff/Petitioner is severely suicidal and a victim of domestic violence laws of New York.

24.) Defendant New York City Department of Correctional services (Rikers Island), denied him the right to keep his personal property, to wit: one "red" leather jacket emblazoned with the Brooklyn Bridge on the back, and one pair of "blue" suede boots (Nike ACG type). The department confiscated these items because their colors are associated with gangs "Bloods and Crips". Plaintiff/Petitioner is a neither Blood nor Crip. And the department created a "**Bailment**" where they did not allow him to "mail" his property home, and after four years incarceration, the property cannot be located. The department is liable and such

loss is actionable. Plaintiff/Petitioner was released from prison on 12-12-12 and he sought to retrieve his property but was informed it is too late, the property was disposed of. Plaintiff/Petitioner was never apprised of a particular date or time his property was to be disposed of, nor was he instructed how long the department would hold it. The value of the coat was $500 and the value of the boots was $200. Rikers Island need to come up with a better solution to taking inmates clothing item to store for security purposes. Defendant New York City Department of Correctional Services need to ship inmates confiscated property to an address provided by the inmate, and ship at the expense of the city to the address provided, so as to eliminate tortuous litigations, and an expense tax-payers can avoid.

25.) Defendant Joseph Gentile through his agent defendant Charlie Wise, allowed Agents Defendants from Narco Freedom to move petitioner/plaintiff to a transitional house ("Miracle House") in Canarsie Brooklyn , following his completion of Narco Freedom. When it was discovered that plaintiff/petitioner was African American the Caucasian or white house manager at this located objected to his presence because he identified himself as a "Five Percenter "or member of the Nation of Gods and Earths. This discrimination violates the religious land act of 2000(e). Plaintiff/Petitioner was eventually relocated to a much smaller location, with deplorable conditions and no significant space, to accommodate a 250 lb man. Defendant Miracle House tried to place plaintiff/petitioner on a "top" bed despite he has documented knee problems. Defendant Miracle House also relocated plaintiff/petitioner to a more uninhabitable type environment housing more Aftrican Americans. Plaintiff/Petitioner's personal property was stolen out his bags during this transfer, which included his HP Pavilion laptop. Plaintiff/Petitioner went to Bellevue Men' shelter (I.D. #754124)

26.) Defendant Sylvia Lake stole plaintiff's/petitioner's jewelry, which he left with her daughter Defendant Godoy. Defendant Godoy gave her mother plaintiff's/petitioner's jewelry consisting of a Five Percenter "Universal Flag" in solid gold metal and a solid gold metal chain; a 32 and 1/3 degree Masonic ring, solid gold and a solid gold bracelet , and another solid gold chain and a pinky ring with black Onyx on it. Defendant Lake pawned plaintiff/petitioner's jewelry without his permission and failed to retrieve it in a timely fashion. This possession and pawning created a "bailment", enforceable by this court. Plaintiff/Petitioner pray a judgment be imposed against Defendant Lake and Godoy for desecrating his "religious" symbol by pawning his "religious medallion," in violation of his civil right under amendment one of the United States Constitution.

## COUNT ONE ; BREACH OF DUTY OWED

27.) Plaintiff/Petitioner re-alleges and incorporates by reference his allegations in paragraphs 1 through 23, as fully restated herein

28.) The Kings, Albany, Wyoming and all its municipalities failed to adequately train its employees

regarding how to perform their functions without violating the constitutional rights of third parties.

29.) The Municipal Corporation agents informal policy of arresting defendants in their home without a warrant, where probable cause exist is a blatant violation of due process and equal protection of the law. The Municipal Corporation agents practice of undermining its citizens one appeal of right, by deliberately misstating the facts and legal issues of a case, amount to a denial of equal protection of the law and is cruel and unusual punishment, and obstruction of justice.

30.) Parole violates a parolee's rights where they know a complainant is claiming Domestic Violence and have been proven to be unreliable and they continue to get parolee arrested under false pretenses and they do nothing to protect plaintiff's/petitioner's rights and they hold hearings and antagonize parolee; amounting to cruel and unusual punishment and an abuse of discretion, and a denial of equal protection of the law.

31.) Parole violates a plaintiff's/petitioner's rights where they compel him to conform to order of protection guidelines and do nothing to keep him from being a victim of harassment. Where they subject him to participate in drug program and he does not have a drug problem, where they force him to live in dilapidated housing, to make it convenient for parole, in cahoots with HRA and drug programs that don't check for dangerous drugs and put ex-offenders at-risk in an environment, which is not secure and conducive to wean them off drugs.

32.) HRA, Parole, Head Start, Narco Freedom, Miracle House, Child & Family Services, The Courts and The Clerks office, New York City Police Department Riker's Island, and Defendants Godoy and Lake violated plaintiff's/petitioner's constitutional rights under Article 1, sections: 5, 6, 8, 11 and 12 of the New York state constitution; and amendments 4, 5, 6, 8 and 14 of the United States constitution.

33.) Plaintiff/Petitioner request an order declaring that the Defendants have acted in violation of all those rights listed in paragraph 29 above.

34.) Plaintiff/Petitioner request to be compensated in the amount of Seven Million dollars or an amount the court seem is sufficient.

35.) That the court issue a temporary restraining order directing the defendants to cease and desist harassing him causing him to contemplate suicide. And issue a nominal amount of $1.00 to impress upon the Defendants: "this type of behavior will not be tolerated.

Signed this __10th__ day of December 2013.

I hereby declare on the grounds of perjury that what I said is true or what I believe to be true upon information and belief, pursuant to 28 USC, section 1746.

*Dexter Murray*

Dexter Murray
554 Jefferson
Brooklyn, N.Y. 11221

Dexter Murray, Pro Se

Plaintiff/Petitioner prefer not to provide an address to prevent the potential for stalking and harassment.

### ADDRESSES TO THE ABOVE NAME DEFENDANTS

1.) New York State Dept Correctional Services
   1220 Washington Avenue
   Albany, N.Y. 12226

2.) New York City Police Department
   One Police Plaza
   New York, N.Y. 10007

3.) New York State Division of Parole
   Chairperson Andrea W. Evans
   92 Central Avenue
   Albany, N. Y. 12206

4.) Human Resource Administrative Department
   Union Square Job Center
   109 East 16th Street
   New York, N.Y. 10003-0000

5.) Kings County District attorney's Office
   350 Jay Street
   Brooklyn, N.Y. 11201

6.) Kings County Supreme Court Clerk Office
   320 Jay Street
   Brooklyn, N.Y. 11201

7.) New York State Kings County Supreme Court
 320 Jay Street
 Brooklyn, N.Y. 11201

8.) New York State Wyoming County Supreme Court
 147 North Main Street
 Warsaw, N.Y. 14569

9.) New York State Office of Child & Family Services
 Child Abuse and Maltreatment Register
 P.O. Box 4480
 Albany, New York 12204-0480

10.) Bridge Plaza Alternatives,
 Narco Freedom 37-14 34th Street
 Long Island City, N.Y. 11101

11.) Miracle House 4 Inc.
 Joseph Gentile
 778 MacDonough Sttreet
 Brooklyn, N.Y. 11233

12.) 75th Precinct Detective Tammy Weisberg
 1000 Sutter Avenue
 Brooklyn, N.Y. 11208-3553

13.) "John Doe" Court Officer
 Kings County Family Court....... .................. ...............(Badge #6377)
 330 Jay Street
 Brooklyn, N.Y. 11201

14.) Sasha Godoy
 200 Bethel Loop B2 ............ ................. .......... Works at Gap store on 34th street, Manhattan
 Apt. #5A                                              daughter of Sylvia Lake listed below
 Brooklyn, N.Y.11239

15.) Sylvia Lake
 200 Bethel Loop B2 ........... ..................Works on Montague street as live-in home attendant
 Apt. #5A                                             best service Sat/Sun very early or very late evening
 Brooklyn, New York 11239

16.) La-Starr Davis
New York State Office of Children and Family Services
Child Abuse and Maltreatment Register
P.O. Box 4480
Albany, New York 12204-0480

17.) Parole Officer Kathleen Petgrave
New York State Division of Parole, Brooklyn 4
340 Livingston Street
Brooklyn, New York 11201

18.) Parole Officer Supervisor Alphonso Camacho
New York State Division of Parole, Brooklyn 4
340 Livingston Street
Brooklyn, N.Y. 11201

19.) PAL A & M Schwartz Head Start
452 Pennsylvania Avenue
Brooklyn, New York 11207

20.) Director Mrs. Rudder
452 Pennsylvania Avenue
Brooklyn, New York 11207

21.) Teacher Mrs. Rodriguez
452 Pennsylvania Avenue
Brooklyn, New York 11207

22.) Atten: Captain Maximo Tolentino
Domestic Violence Detective Unit
301 Gold Street
Brooklyn, N.Y. 11201-3003

23.) Atten: Internal Affairs Department
67th Precinct
2820 Snyder Avenue
Brooklyn, N.Y. 11226-4118